**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE JAMES MADISON PROJECT <u>et al.</u>, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 16-116 (RBW) |
| DEPARTMENT OF JUSTICE, <u>et al.</u>, | * * * * | |
| Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs The James Madison Project ("JMP") and Ken Dilanian ("Mr. Dilanian") (hereinafter referred to jointly as "JMP") brought this action under the Freedom of Information Act ("FOIA") in order to secure the release of documents improperly withheld by several U.S. Government agencies regarding the investigation into and ultimate prosecution of former NSA official Thomas Drake ("Mr. Drake"). Presently before this Court for consideration is a Motion for Partial Summary Judgment ("Defendants' Motion") filed by three of those agencies, namely the Central Intelligence Agency ("CIA"), the Executive Office for United States Attorneys ("EOUSA"), and the Office of the Director of National Intelligence ("ODNI").

Contrary to the assertions set forth in the Defendants' Motion, JMP will demonstrate that there remains a genuine issue of material fact in dispute that precludes awarding summary judgment to ODNI with respect to the invocations of Exemption 5.[1]

Therefore, this Court should deny in part the Defendants' Motion.

---

[1] JMP is conceding all remaining arguments raised in the Defendants' Motion.

## FACTUAL BACKGROUND

The factual and procedural background at issue in this proceeding is largely set out in detail in the Defendants' Statement of Material Facts Not in Dispute (Dkt. No. 24-1) (filed November 10, 2016)("Statement of Material Facts"), which is incorporated herein by reference.[2] JMP will not further burden this Court with a recitation of the factual background to the FOIA requests it submitted.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment pursuant to FRCP 56 should be awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the appropriateness of summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), accepting the non-moving party's evidence as true and drawing "all justifiable inferences" in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court should only find that "there is a genuine issue for trial" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249 (citation omitted).

---

[2] The factual statements made in the Defendant's Statement of Material Facts are incorporated only in relation to paragraphs 12-13, 17-25, 27-30, and 32-40, and only to the extent that they do not constitute legal characterizations or conclusions.

The mere existence of some alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there is no genuine issue of material fact. See Holcomb, 433 F.3d at 895 (internal quotation marks and citations omitted). A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. Anderson, 477 U.S. at 248. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## II. THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE REGARDING THE APPROPRIATENESS OF ODNI'S INVOCATION OF EXEMPTION 5

The deliberative process privilege, as incorporated into FOIA, "allows an agency to withhold 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'" Elec. Frontier Found. v. Dep't of Justice, 739 F.3d 1, 4 (D.C. Cir. 2014), quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153 (1975). It is "limited to documents that are 'predecisional' and 'deliberative,' meaning 'they reflect[] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoption of a policy.'" Elec. Frontier Found., 739 F.3d at 4, quoting Pub. Citizen, Inc. v. Office of Mgmt. & Budget, 598 F.3d 865, 875 (D.C. Cir. 2010)(alterations in original).

The privilege does not cover documents that authoritatively state or determine the agency's policy. See Elec. Frontier Found., 739 F.3d at 8; see also Sears, Roebuck, 421 U.S. at 152-53 (defining the "working law" of the agency as the reasons which supplied the basis for an agency policy adopted and indicating it falls beyond the scope of the privilege). In other words, an agency is not permitted to develop "a body of secret law'", used by it in the discharge of regulatory duties and in its dealing with the public, but hidden behind a veil because it is not designated as "formal", "binding", or "final". See Elec. Frontier Found., 739 F.3d at 7, quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 867 (D.C. Cir. 1980).

> (T)he policy of promoting the free flow of ideas within the agency does not apply here, for private transmittals of binding agency opinions and interpretations should not be encouraged. These are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public. Thus, to prevent the development of secret law within the Commission, we must require it to disclose orders and interpretations which it actually applies in cases before it.

Coastal States Gas Corp., 617 F.2d at 868, quoting Sterling Drug, Inc. v. FTC, 450 F.3d 698, 708 (D.C. Cir. 1971).

The D.C. Circuit has applied this exception to the deliberative process privilege on several occasions as the basis upon which to order the disclosure of records. See e.g., Tax Analysts v. IRS, 117 F.3d 607, 609, 618 (D.C. Cir. 1997)(finding that "structure and purposes" of advisory memoranda issued to field personnel are considered statements of the agency's legal position and therefore not protected); Coastal States Gas Corp., 617 F.2d at 869 (ordering disclosure of memoranda from regional counsel to field offices that were relied upon in discharging responsibilities); Sterling Drug, Inc.,

4

450 F.2d at 708 (disclosing memoranda prepared by agency containing interpretations applied in a particular acquisition case).

ODNI invoked Exemption 5 to redact language from two e-mail threads, which the agency has labeled Documents A and B. See Memorandum in Support of Defendants' Motion for Partial Summary Judgment at 18 (Dkt. No. 24-2)(filed November 10, 2016) ("Defendants' Memo"). We will address each below.

Document A is an e-mail thread dated June 8, 2011, between Robert Litt ("Mr. Litt"), the ODNI General Counsel, and several senior level ODNI officials, including the Director of National Intelligence, James Clapper ("Director Clapper"). This e-mail thread appears to have arisen in the immediate aftermath of the decision by the Department of Justice to withdraw virtually the entirety of the criminal charges against Mr. Drake on the eve of trial, and to negotiate a plea deal by which Mr. Drake would admit guilt to a misdemeanor charge. *https://www.yahoo.com/news/government-case-against-whistleblower-thomas-drake-collapses-145848284.html* (last accessed December 8, 2016).

The initial part of the e-mail thread, sent by Mr. Litt to Director Clapper and other ODNI officials, consists of apparently four paragraphs worth of information, all of which is redacted in its entirety under Exemption 5. Dkt. No. 24-7 at *20-*21. The response from an unidentified ODNI official is not redacted, with the exception of the official's name. Id. at *20.

ODNI submits to this Court that the four paragraphs worth of information merely consists of discussions about, as well as assessments and characterizations of, the case against Mr. Drake. Defendants' Memo, Exhibit "4" at ¶32. Given the categorical nature

5

of the redactions, it is virtually impossible to ascertain the actual context of the discussion. Is ODNI suggesting Mr. Litt merely offered a four paragraph long "assessment"? That at no time in the entire debrief did he ever once outline official ODNI policy, particularly in terms of how issues would proceed in the aftermath?
See Declaration of Bradley P. Moss, Esq. at ¶4 (dated December 9, 2016)("Moss Decl."), attached as Exhibit "1".

Document B is an e-mail thread between Mr. Litt and unidentified ODNI staffers on August 24, 2009. To give context, by this point in the investigation saga the FBI had already conducted its seizure of equipment and records at Mr. Drake's private residence, Mr. Drake had voluntarily sat for three separate interviews with FBI investigators, and the original prosecutor on the case had already pressed Mr. Drake to agree to a plea deal. *http://www.washingtonpost.com/wp-dyn/content/article/2010/07/13/AR2010071305992_4.html* (last accessed December 8, 2016).

In the first portion of the thread, Mr. Litt states that he had recently received briefings from an unidentified individual/agency about Mr. Drake's case, and then makes an additional comment that has been redacted under Exemption 5. Dkt. No. 24-7 at *25. In the response portion of the thread, an unidentified ODNI official states that he/she had received some background from the FBI. The official subsequently states that the "bottom line is", at which point ODNI has redacted the three additional lines of verbiage. In the following paragraph, the same ODNI official states, "off the record just between us and the FBI", at which point ODNI redacted four lines worth of verbiage. Id.

ODNI submits to this Court that the redactions concerned assessments of the case, including what steps ODNI should take next. Defendants' Memo, Exhibit "4" at ¶37. It is the latter part of that description that is of particular interest and raises questions that are not resolved by ODNI's affidavit. Given that at least one – if not both – of the ODNI officials on the thread were senior in position and authority, it is reasonable to conclude that any steps they concluded should be taken next were ones ODNI ultimately took. In that situation, their comments would fall outside of the scope of information that is predecisional and instead qualify as "working law" information that falls outside the scope of Exemption 5 protection. See Moss Decl. at ¶5.

At a minimum, JMP respectfully requests this Court to review *in camera* the unredacted versions of these two e-mail threads to confirm for its own purposes that the redacted verbiage is, in fact, deliberative, predecisional and within the scope of Exemption 5 protection. See Armstrong v. Executive Office of the President, 97 F.3d 575, 577-78 (D.C. Cir. 1996)(courts have broad discretion to decide whether *in camera* review is necessary to determine whether government has met its burden to demonstrate no reasonably segregable information exists within withheld documents). Although this is arguably a common request by FOIA litigants, we believe there is a particularly strong argument for it in the present case.

The deliberative process privilege is not absolute; rather, it is "relative to the need demonstrated for the information." United States v. Trabelsi, 2015 U.S. Dist. LEXIS 117572, *18 (D.D.C. Sept. 3, 2015), quoting Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 404 (D.C. Cir. 1984). The need determination is to be made flexibly on a case-by-case, ad hoc basis. In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).

When there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government. See id. at 738 (internal quotations omitted); see also Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 327-29 (D.D.C. 1966)(consider relevance of document, alternative means of proof, and allegations of misconduct).

JMP respectfully submits that the background of the prosecution of Mr. Drake at least warrants a measure of skepticism by this Court. Mr. Drake initially tried to lawfully and properly report within the U.S. Government his concerns about the NSA's surveillance programs. *http://www.cbsnews.com/news/the-espionage-act-why-tom-drake-was-indicted-22-05-2011/* (last accessed December 8, 2016). When he felt that the internal reporting was not effective, Mr. Drake provided to a reporter what he viewed as unclassified information about NSA surveillance programs. *http://www.washingtonpost.com/wp-dyn/content/article/2010/07/13/AR2010071305992 _3.html* (last accessed December 8, 2016). It was the information he provided to the reporter that was the basis for his 2010 indictment, and it was the Government's claim that the information had been classified that fell apart on the eve of trial. *https://www.yahoo.com/news/government-case-against-whistleblower-thomas-drake-collapses-145848284.html* (last accessed December 8, 2016). Mr. Drake spent several years pursuing administrative relief for what he views as retaliation for protected whistleblower disclosures. *http://www.mcclatchydc.com/news/nation-world/national/ national-security/article24780436.html* (last accessed December 8, 2016).

In terms of the two e-mail threads themselves, they constitute a never-before-seen glimpse into how ODNI's senior officials talked about the investigation and later fallout from the prosecution falling apart. Mr. Drake's initial lawful whistleblower disclosures brought considerable embarrassment upon parts of the Intelligence Community, particularly when the NSA program he (and three other NSA colleagues) had warned would be a fiasco ended up wasting $1.2 billion and spurred Congress to revoke for five years NSA's authority to manage large projects. *http://www.cbsnews.com/news/the-espionage-act-why-tom-drake-was-indicted-22-05-2011/4/* (last accessed December 8, 2016). A healthy dose of skepticism by this Court would be more than reasonable in light of these circumstances.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Partial Summary Judgment should be denied with respect to the Exemption 5 redactions made by ODNI.

Date: December 9, 2016

                                                     Respectfully submitted,

                                                     /s/
                                              _____
                                              Bradley P. Moss, Esq.
                                              D.C. Bar #975905
                                              Mark S. Zaid, Esq.
                                              D.C. Bar #440532
                                              Mark S. Zaid, P.C.
                                              1250 Connecticut Avenue, N.W.
                                              Suite 200
                                              Washington, D.C. 20036
                                              (202) 454-2809
                                              (202) 330-5610 fax
                                              Brad@MarkZaid.com
                                              Mark@MarkZaid.com

                                              Attorneys for the Plaintiffs