# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT and
KEN DILANIAN,

        Plaintiffs,

    v.

DEPARTMENT OF JUSTICE, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 16-116 (RBW)

## MEMORANDUM OPINION

The plaintiffs, The James Madison Project and Ken Dilanian, brought this Freedom of Information Act ("FOIA") action against the defendants, the United States "Department of Justice [(the 'Department')], [the United States] Department of Defense, [the] Central Intelligence Agency [('CIA'),] and the Office of the Director of National Intelligence [(the 'Director')], (as well as their subordinate entities)" because of the defendants' allegedly improper withholding of the documents sought in their FOIA requests. Second Amended Complaint ("Compl.") at 2.[1] Currently before the Court is the Defendants' Motion for Partial Summary Judgment ("Defs.' Mot."), which seeks summary judgment on the CIA's, the Executive Office's, and the Director's responses to the plaintiffs' FOIA requests. See Defs.' Mot. at 1. Upon consideration of the parties' submissions,[2] the Court concludes that it must grant in part and deny

---

[1] The plaintiff submitted FOIA requests to the following agencies within or subdivisions of the Department: the Executive Office for the United States Attorneys (the "Executive Office"), the Criminal Division ("DOJ Crim."), the National Security Division, and the Federal Bureau of Investigation ("FBI"). See Compl. ¶¶ 5, 12, 23, 30, 41. The plaintiff also submitted FOIA requests to the National Security Agency ("NSA") and the Office of the Inspector General, agencies that are both components of the Department of Defense. Id. ¶¶ 6, 46, 53.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Defendants' Motion for Partial Summary Judgment ("Defs.' Mem.");

(continued . . .)

in part the defendants' motion.

## I.    BACKGROUND

The undisputed facts relevant to the defendants' motion are the following.  See generally Pls.' Facts (not disputing any the defendants' facts).  On December 10, 2015, the plaintiffs submitted a FOIA request to the Director, see Defs.' Facts ¶ 27, seeking "copies of all [of the Director's] records pertaining to [Thomas Andrews] Drake from January 1, 2000, to December 31, 2011," id. ¶ 28.  Specifically, the plaintiffs sought all records concerning "the criminal/intelligence investigation into [the] activities" of Drake, who was a "former NSA employee."  Compl. ¶ 9.[3]  The Director "reasonably determined" that its "Office of General Counsel, [ ] Office of the Intelligence Community Inspector General, and [ ] National Counterintelligence and Security Center" would "potentially have documents responsive to [the p]laintiffs' FOIA request[]."  Defs.' Facts ¶ 29.  The Director therefore instructed those offices to "conduct[] systematic searches of both their physical and electronic records" for potentially responsive documents.  Id. ¶ 30.  "Only the Office of the General Counsel identified any potentially responsive records, which were then reviewed by the [Director's] Information Management Division [ ] to determine whether these documents were actually responsive to [the p]laintiffs' FOIA request."  Id. ¶ 32.

Based on its review of the potentially responsive documents that were located, the

_____

(. . . continued)
(2) the Defendants' Statement of Material Facts Not in Dispute ("Defs.' Facts"); (3) the Declaration of Mark W. Ewing, Chief Management Officer, Office of the Director of National Intelligence ("Ewing Decl."); (4) the plaintiffs' Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment ("Pls.' Opp'n"); (5) the plaintiffs' Response to Defendants' Statement of Material Facts Not in Dispute ("Pls.' Facts"); (6) the Rule 56(d) Declaration of Bradley P. Moss, Esq. ("Moss Decl."); and (7) the Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment ("Defs.' Reply").

[3] "Drake worked for [the] NSA for more than two decades, first as a contractor and then—beginning on August 28, 2001—as a Federal employee."  Compl. ¶ 10.  "On November 28, 2007, the FBI conducted a raid of [ ] Drake's home and he was later indicted on April 14, 2010."  Id. ¶ 11.  However, "[o]n the eve of trial, the [Department] dropped all but one of the charges against [ ] Drake, who agreed to plead guilty to one misdemeanor charge."  Id.

Director "identified four documents, which it ha[d] designated [as] Documents A, B, C, and D, as responsive to [the p]laintiffs' FOIA request." Id. ¶ 33. On July 28, 2016, the Director "released a redacted version of Document A, an e-mail thread," id. ¶ 35, and on October 3, 2016, the Director "released redacted versions of Documents B and C, both also e-mail threads," id. ¶ 36. The Director redacted information from Documents A, B, and C pursuant to several FOIA exemptions. See id. ¶¶ 38–39. The Director "referred Document D to the NSA for review and direct release to [the p]laintiffs," id. ¶ 34, and this document is not a subject of this memorandum opinion.

The plaintiffs' Second Amended Complaint asserts eleven separate causes of actions. See generally Compl. Through their motion, the defendants seek summary judgment only as to counts three, ten, and eleven. See Defs.' Mot. at 1; see also Compl. ¶¶ 23–29, 63–72. The plaintiffs now challenge only the Director's redactions of Documents A and B pursuant to the deliberative process privilege of FOIA Exemption 5, see Pls.' Opp'n at 1, 5, which relates to count eleven of the plaintiffs' Second Amended Complaint, see Compl. ¶¶ 68–72.

## II.   STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or

denials." Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at

248). Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue

of fact." Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999)

(Garland, J., concurring) (alteration in original) (quoting Exxon Corp. v. FTC, 663 F.2d 120,

126–27 (D.C. Cir. 1980)). If the Court concludes that "the nonmoving party has failed to make a

sufficient showing on an essential element of [its] case with respect to which [it] has the burden

of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).

"FOIA cases typically are resolved on a motion for summary judgment." Ortiz v. U.S.

Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S.

Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "[The] FOIA requires federal agencies to

disclose, upon request, broad classes of agency records unless the records are covered by the

statute's exemptions." Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833

(D.C. Cir. 2001). In a FOIA action, the defendant agency has "[the] burden of demonstrating

that the withheld documents are exempt from disclosure." Boyd v. U.S. Dep't of Justice, 475

F.3d 381, 385 (D.C. Cir. 2007) (citation omitted). The Court will grant summary judgment to

the government in a FOIA case only if the agency can prove "that it has fully discharged its

obligations under the FOIA, after the underlying facts and the inferences to be drawn from them

are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S.

Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of

Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the

production of documents under the FOIA, "an agency is entitled to summary judgment if no

material facts are in dispute and if it demonstrates 'that each document that falls within the class

requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'"

Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. CIA, 607

F.2d 339, 352 (D.C. Cir. 1978)).

## III.    ANALYSIS

The issue before the Court in this case is whether the Director properly withheld

information from Documents A and B pursuant to Exemption 5 of the FOIA.  See Pls.' Opp'n at

5.[4]  The plaintiffs contend that the Director's "categorical nature of the redactions" to Document

A makes "it [ ] virtually impossible to ascertain the actual context of the discussion" in that

document.  Id. at 5–6; see also id. at 5 (stating that the Director asserts that the redacted

"information merely consists of discussions about, as well as assessments and characterizations

of, the case against [ ] Drake").  The plaintiffs also argue that the Director's description of the

redactions to Document B "raises questions that are not resolved by [the Director's] affidavit,"

particularly whether the redacted language "qualif[ies] as 'working law' information that falls

outside the scope of Exemption 5 protection."  Id. at 7.[5]

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a]

or letters that would not be available by law to a party other than an agency in litigation with the

agency."  5 U.S.C. § 552(b)(5) (2012).  "Exemption 5 incorporates the privileges that the

[g]overnment may claim when litigating against a private party, including the governmental

---

[4] In their opposition, the plaintiffs "conced[e] all [other] arguments raised in the [d]efendants' motion" for partial summary judgment.  Pls.' Opp'n at 1 n.1; see also Defs.' Mem at 1–2 (arguing that summary judgment should be entered in their favor as to counts three and ten).  Therefore, because the plaintiffs do not challenge the CIA's or the Executive Office's responses to their FOIA request, see Pls.' Facts ¶¶ 2–11 (noting that they are "voluntarily dismissing the CIA from this litigation"); see also id. ¶¶ 12–26 (asserting that they are "conceding the adequacy of [the Executive Office's] search"), the Court will grant summary judgment in favor of the defendants with respect to counts three and ten of the plaintiffs' Second Amended Complaint.

[5] The plaintiffs do not challenge (1) the adequacy of the Director's search for documents responsive to their FOIA request; (2) the Director's redactions applied to Documents A and B pursuant to FOIA Exemptions 1, 3, or 7(E); or (3) the Director's redactions to Document C.  See Defs.' Mem. at 14–20; see also Pls.' Opp'n at 1 n.1 (expressly conceding these arguments).  Accordingly, the Court will grant the Director summary judgment as to these claims within count eleven of the plaintiffs' Second Amended Complaint.

attorney-client and attorney work product privileges, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege." <u>Abtew v. U.S. Dep't of Homeland Sec.</u>, 808 F.3d 895, 898 (D.C. Cir. 2015).

Here, the Director invokes the deliberative process privilege, which "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." <u>Dep't of Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8–9 (2001). "The privilege serves to preserve the 'open and frank discussion' necessary for effective agency decisionmaking[, and it] protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" <u>Abtew</u>, 808 F.3d at 898 (first quoting <u>Klamath Water Users Protective Ass'n</u>, 532 U.S. at 9; then quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 150 (1975)).

"To be exempt from disclosure under the deliberative process privilege, the agency must show that the information is both (1) 'predecisional' and (2) 'deliberative.'" <u>Cleveland v. U.S. Dep't of State</u>, 128 F. Supp. 3d 284, 298 (D.D.C. 2015) (Walton, J.) (quoting <u>Nat'l Ass'n of Home Builders v. Norton</u>, 309 F.3d 26, 39 (D.C. Cir. 2002)). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." <u>Petroleum Info. Corp. v. U.S. Dep't of Interior</u>, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting <u>Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.</u>, 421 U.S. 168, 184 (1975)); <u>see also</u> <u>Senate of P.R. v. U.S. Dep't of Justice</u>, 823 F.2d 574, 585 (D.C. Cir. 1987) ("A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates."). "And a document is deliberative if it is 'a part of the agency give-and-take— of the deliberative process—by which the decision itself is made." <u>Abtew</u>, 808 F.3d at 899

(quoting <u>Vaughn v. Rosen</u>, 523 F.2d 1136, 1144 (D.C. Cir. 1975)); <u>see also</u> <u>Pub. Emps. for</u>

<u>Envtl. Responsibility v. EPA</u>, 213 F. Supp. 3d 1, 11 (D.D.C. 2016) ("The 'key question' in

determining whether the material is deliberative in nature 'is whether disclosure of the

information would discourage candid discussion within the agency.'" (quoting <u>Access Reports v.</u>

<u>U.S. Dep't of Justice</u>, 926 F.2d 1192, 1195 (D.C. Cir. 1991))).

       "The agency must establish 'what deliberative process is involved, and the role played by

the documents in issue in the course of that process.'"  <u>Senate of P.R.</u>, 823 F.2d at 585–86

(quoting <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 868 (D.C. Cir. 1980)).

"The need to describe each withheld document when Exemption 5 is at issue is particularly acute

because 'the deliberative process privilege is so dependent upon the individual document and the

role it plays in the administrative process.'" <u>Pub. Emps. for Envtl. Responsibility</u>, 213 F. Supp.

3d at 11 (quoting <u>Animal Legal Def. Fund, Inc. v. U.S. Dep't of Air Force</u>, 44 F. Supp. 2d 295,

299 (D.D.C. 1999)).  Accordingly, "to sustain its burden of showing that records were properly

withheld under Exemption 5, an agency must provide in its declaration . . . precisely tailored

explanations for each withheld record at issue." <u>Nat'l Sec. Counselors v. CIA</u>, 960 F. Supp. 2d

101, 188 (D.D.C. 2013).  "[T]he agency must [also] describe 'the nature of the decisionmaking

authority vested in the office or person issuing the disputed document(s), and the positions in the

chain of command of the parties to the documents.'"  <u>Elec. Frontier Found. v. U.S. Dep't of</u>

<u>Justice</u>, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (Walton, J.) (quoting <u>Arthur Andersen & Co. v.</u>

<u>IRS</u>, 679 F.2d 254, 258 (D.C. Cir. 1982)).  "If the agency does not provide 'the minimal

information necessary to make a determination concerning applicability of the deliberative

process privilege[,]' then the court should deny the agency summary judgment." <u>Hunton &</u>

<u>Williams LLP v. EPA</u>, 248 F. Supp. 3d 220, 241 (D.D.C. 2017) (quoting <u>Elec. Frontier Found.</u>,

826 F. Supp. 2d at 173).

Based on the Director's descriptions of the redacted language, and "bearing in mind 'the strong policy of the FOIA that the public is entitled to know what its government is doing and why,' the Court cannot say that [the Director's] redactions [pursuant to the deliberative process privilege of FOIA Exemption 5] were proper." <u>Wisdom v. U.S. Tr. Program</u>, 232 F. Supp. 3d 97, 120 (D.D.C. 2017) (quoting <u>Coastal States Gas Corp.</u>, 617 F.2d at 868). As support for its position that it properly redacted and withheld information from both Documents A and B, the Director submits the declaration of Mark. W. Ewing, its Chief Management Officer. <u>See</u> Ewing Decl. ¶¶ 1, 30–38. Regarding Document A, Ewing states that "the withheld information . . . relates to the status of a specific law enforcement investigation and prosecution relating to the unauthorized disclosure of classified information, or 'leak' of classified information by [ ] Drake." <u>Id.</u> ¶ 32. Ewing further provides that "the withheld information not only discusses the case itself, but the withheld information contains employees' assessments and characterizations of the case, including frank comments and subjective opinions." <u>Id.</u> Contrary to the Director's position, <u>see</u> Defs.' Reply at 3–5, Ewing's description "fail[s] to provide sufficient factual context for . . . the information withheld under the deliberative process privilege to allow the Court to conclude that the privilege has been properly invoked," <u>Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.</u>, 841 F. Supp. 2d 142, 161 (D.D.C. 2012). Specifically, Ewing "do[es] not describe either the specific deliberative process, the function of the particular record, or the nature of the decisionmaking authority." <u>Hunton & Williams LLP</u>, 248 F. Supp. 3d at 243. Moreover, Ewing does not address "any potential harm to the [specific] deliberative process that would be incurred by releasing the [withheld information]." <u>Id.</u> at 244; <u>see also</u> Ewing Decl. ¶ 32 (using general, boilerplate language to describe harm that would result from the release of

the withheld information).

Although Ewing states that the withheld information "should be protected from release to allow agencies to freely explore possibilities, engage in internal debates, or challenge assumptions or conclusions without fear of public scrutiny," Ewing Decl. ¶ 32, case law is clear that the deliberative process privilege protects "the 'open and frank discussion[s]' necessary for effective agency decisionmaking," Abtew, 808 F.3d at 898 (quoting Klamath Water Users Protective Ass'n, 532 U.S. at 9); see also Klamath Water Users Protective Ass'n, 532 U.S. at 9 (noting that the deliberative process privilege's "object is to enhance the quality of agency decisions" (citation and internal quotation marks omitted)); Nat'l Sec. Archive v. CIA, 752 F.3d 460, 462 (D.C. Cir. 2014) (stating that the deliberative process privilege "encourage[s] the candid and frank exchange of ideas in the agency's decisionmaking process"); Dudman Commc'ns Corp. v. Dep't of Air Force, 815 F.2d 1565, 1567 (D.C. Cir. 1987) ("[If] agencies [were] forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." (internal quotation marks and citation omitted)). Consequently, the open and frank discussions and opinions must relate to the agency decisionmaking process, a process which neither the Director nor Ewing in his declaration has identified.

Additionally, in its review of a redacted version of Document A, which Ewing attached to his declaration, see Ewing Decl., Exhibit ("Ex.") A (IMD July 28, 2016, correspondence to plaintiffs and Document A) at 3–4, the Court is not convinced that the withheld information "sufficiently reflect[s] the give and take of the deliberative process to warrant continued redaction," Pub. Citizen, Inc. v. Office of Mgmt. & Budget, 598 F.3d 865, 877 (D.C. Cir. 2010). Rather, the language in the e-mail responding to the e-mail containing the redacted language

raises an inference that the withheld information was merely an update on the status of the Drake prosecution, and the Director's involvement in that matter is not clear from what has been submitted to the Court.  <u>See</u> Ewing Decl., Ex. A (IMD July 28, 2016, correspondence to plaintiffs and Document A) at 3 ("Bad news indeed, and indicative of what has been a weak spot in any/all efforts to prioritize pursuit of leakers.  We continue to work with the agencies, and are generally of the same mind as they in pursuing/discovering/investigating individual incidents. Whether and when the next one reaches the courts in the future is certainly more in question after this.").

The Director's description of the withheld information from Document B fares no better. Similar to his explanation of the redactions in Document A, Ewing explains that the language redacted in Document B "relates to [ ] employees' assessments and frank comments related to the investigation and prosecution" of Drake and "includes . . . discussions and assessments regarding what next steps [the Director] should take."  <u>Id.</u> ¶ 37.  While this description provides more context on the withheld information in Document B than Ewing's description of Document A (i.e., Ewing's inclusion of the phrase "next steps"), it, however, also fails to provide the Court "'the minimal information necessary to make a determination' concerning [the] applicability of the deliberative process privilege."  <u>Elec. Frontier Found.</u>, 826 F. Supp. 2d at 173 (quoting <u>Coastal States Gas Corp.</u>, 617 F.2d at 861).  From this vague description, the Court cannot discern the particular deliberative process involved, the role that the withheld information played in that deliberative process, or the nature of the decisionmaking authority vested in the e-mail participants.  Without sufficient contextual detail, "the Court in unable to assess, one way or the other, the [Director's] deliberative process privilege claim."  <u>Id.</u> at 169.[6]  Thus, the Director has

---

[6] The plaintiffs also speculate that Ewing's description of the withheld information in Document B could reasonably

(continued . . .)

not "carr[ied] its burden of properly invoking [FOIA] E]xemption 5 by submitting [a]

sufficiently detailed . . . declaration[]." Hardy v. Bureau of Alcohol, Tobacco, Firearms &

Explosives, 243 F. Supp. 3d 155, 162 (D.D.C. 2017).

Having found Ewing's declaration inadequate for it to determine the applicability of the

deliberative process privilege, "the Court has several options regarding how to now proceed in

this case." Elec. Frontier Found., 826 F. Supp. 2d at 174–75; see also Spirko v. U.S. Postal

Serv., 147 F.3d 992, 997 (D.C. Cir. 1998) ("If the agency fails to provide a sufficiently detailed

explanation to enable the district court to make a de novo determination of the agency's claims

of exemption, the district court then has several options, including inspecting the documents in

camera, requesting further affidavits, or allowing the plaintiff discovery.").[7]  The plaintiffs

"request[] this Court to review in camera the unredacted versions of [Documents A and B] to

confirm for its own purposes that the redacted verbiage is, in fact, deliberative, predecisional and

within the scope of Exemption 5 protection."  Pls.' Opp'n at 7.  As this Circuit has recognized,

---

(. . . continued)
lead one to believe that the redacted language "fall[s] outside of the scope of information that is predecisional and
instead qualif[ies] as 'working law' information that falls outside the scope of Exemption 5 protection."  Pls.' Opp'n
at 7 (noting that at least one of the e-mail participants had senior authority).  Although it is true that the deliberative
process privilege does not protect from disclosure documents that reflect an agency's "working law" (i.e., defined as
"reasons which [supplied] the basis for an agency policy actually adopted"), Elec. Frontier Found. v. U.S. Dep't of
Justice, 739 F.3d 1, 7 (D.C. Cir. 2014), the plaintiffs' "mere speculation" of the presence of "working law" in the
withheld information is not sufficient for the Court to determine that the Director improperly invoked the
deliberative process privilege, see Vento v. IRS, 714 F. Supp. 2d 137, 154 (D.D.C. 2010).

[7] Because the Court has concluded that Ewing's declaration does not provide sufficient contextual detail to allow it
to determine whether the Director's withholdings pursuant to FOIA Exemption 5's deliberative process privilege
were appropriate, the Court need not address the issue of segregability at this point.  See Sussman v. U.S. Marshals
Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("Even when FOIA exemptions apply, '[a]ny reasonably segregable
portion of a record shall be provided to any person requesting such record after deletion of the portions which are
exempt.'  This rule of segregation applies to all FOIA exemptions. . . . Before approving the application of a FOIA
exemption, the district court must make specific findings of segregability regarding the [information] to be
withheld." (citations omitted)).  In any event, the Court cautions the Director that "[t]he question of segregability is
subjective based on the nature of the document in question, and an agency must provide a reasonably detailed
justification rather than conclusory statements to support its claim that the non-exempt material in a document is not
reasonably segregable."  Carter, Fullerton & Hayes LLC v. FTC, 520 F. Supp. 2d 134, 146 (D.D.C. 2007).  In the
Court's view, Ewing's declaration does not provide such detail.  See, e.g., Ewing Decl. ¶¶ 33, 38 (reciting § 552(b)
and stating only that "[a] line-by-line review of [both d]ocument[s] was performed and all reasonably segregable,
non-exempt information has been released with the caveats discussed [ ] concerning withheld information").

"[t]he decision whether to perform <u>in camera</u> inspection is left to the 'broad discretion of [a] trial judge,'" <u>Spirko</u>, 147 F.3d at 996 (first alteration in original) (quoting <u>Lam Lek Chong v. DEA</u>, 929 F.2d 729, 735 (D.C. Cir. 1991)), and "[t]he ultimate criterion is simply . . . [w]hether the district judge believes that [i]n camera inspection is needed in order to make a responsible de novo determination on the claims of exemption," <u>Ray v. Turner</u>, 587 F.2d 1187, 1195 (D.C. Cir. 1978).  However, "[b]ecause a district court should not undertake <u>in camera</u> review of withheld [information] as a substitute for requiring an agency's explanation of its claims exemptions . . . , the Court finds that the best approach is to direct [the Director] to submit" an additional declaration.  <u>Am. Immig. Lawyers Ass'n v. U.S. Dep't of Homeland Sec.</u>, 852 F. Supp. 2d 66, 82 (D.D.C. 2012) (citations omitted).  Accordingly, the Court will require the Director to submit an additional declaration that reassesses the applicability of FOIA Exemption 5 to its withholdings and the issue of segregability.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the defendants' motion for partial summary judgment.  Specifically, with respect to the Director's withholding of information in Documents A and B pursuant to FOIA Exemption 5 and its deliberative process privilege, the motion is denied without prejudice subject to the filing an additional declaration.  The defendants' motion is granted in all other aspects.  Accordingly, the Court will enter summary judgment in favor of the defendants as to counts three and ten of the plaintiffs' Second Amended Complaint.

**SO ORDERED** this 26th day of March, 2018.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.